John J. Nelson (SBN 317598)
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, LLC**
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com

BEN BARNOW (*pro hac vice forthcoming*)
*b.barnow@barnowlaw.com*
ANTHONY L. PARKHILL (*pro hac vice forthcoming*)
*aparkhill@barnowlaw.com*
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312-621-2000

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL SIEGEL, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| POSTMEDS, INC., d/b/a TRUEPILL, | **JURY TRIAL DEMANDED** |
| Defendant. | |

     Plaintiff Michael Siegel ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, brings this class action against Defendant Postmeds, Inc., d/b/a Truepill ("Postmeds" or "Defendant") and complains and alleges upon personal knowledge as to himself and upon information and belief as to all other matters.

## INTRODUCTION

    1.    Plaintiff brings this action against Postmeds for its failure to secure and safeguard their and approximately 2,364,359 similarly situated individuals' personally identifiable information ("PII") and personal health information ("PHI"), including, but not limited to, names, medications, demographic information, and physician names.

    2.    Postmeds is a digital pharmacy company that fulfills mail-order prescriptions.

3.    Between approximately August 30, 2023 and September 1, 2023, unauthorized persons infiltrated Postmeds's network systems and gained access to files containing the PII/PHI of Plaintiff and Class members (the "Data Breach"). Plaintiff and Class members are customers of Postmeds whose sensitive PII/PHI was stolen in the Data Breach.

4.    During the Data Breach, and due to Postmeds's data security and privacy shortcomings, unauthorized persons were able to gain access to and remove the PII/PHI of Plaintiff and Class members.

5.    Postmeds owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII/PHI against unauthorized access and disclosure. Postmeds breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect their PII/PHI from unauthorized access and disclosure.

6.    As a result of Postmeds's inadequate security measures and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's and Class members' PII/PHI was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of himself and all Postmeds customers whose PII/PHI was compromised as a result of the Data Breach.

7.    Plaintiff, on behalf of himself and all other Class members, asserts claims for negligence, negligence per se, breach of fiduciary duty, breach of implied contract, unjust enrichment, violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 *et seq.*, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## **PARTIES**

***Plaintiff Michael Siegel***

8.    Plaintiff Michael Siegel is a citizen of the State of Illinois.

9.    Plaintiff obtained pharmacy or related services from Postmeds. As a condition of receiving such services, Postmeds required Plaintiff to provide it with his PII/PHI.

10.    Based on representations made by Postmeds, Plaintiff believed that Postmeds had implemented and maintained reasonable security and practices to protect his PII/PHI. With this belief

in mind, Plaintiff provided his PII/PHI to Postmeds in connection with receiving pharmacy or related services provided by Postmeds.

11. At all relevant times, Postmeds stored and maintained Plaintiff's PII/PHI on its network systems.

12. Plaintiff takes great care to protect his PII/PHI. Had he known that Postmeds does not adequately protect the PII/PHI in its possession, he would not have obtained pharmacy services from Postmeds or agreed to entrust it with his PII/PHI.

13. Plaintiff received a letter from Postmeds notifying him that his PII/PHI was affected in the Data Breach.

14. As a direct result of the Data Breach, Plaintiff has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft and medical identity theft; the wrongful disclosure and loss of confidentiality of his highly sensitive PII/PHI; deprivation of the value of his PII/PHI; and overpayment for services that did not include adequate data security.

***Defendant Postmeds, Inc.***

15. Defendant Postmeds, Inc., is a Delaware corporation with its principal place of business located at 3121 Diablo Avenue, Hayward, CA 94545. It may be served through its registered agent: CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

## JURISDICTION AND VENUE

16. The Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(d)(2), because (a) there are 100 or more Class members, (b) at least one Class member is a citizen of a state that is diverse from Defendants' citizenship, and (c) the matter in controversy exceeds $5,000,000, exclusive of interest and costs. Further, greater than two-thirds of the Class members reside in states other than the states in which Defendant is a citizens.

17. The Court has personal jurisdiction over Defendant Postmeds, Inc. because it has its principal place of business in California and transacts significant business in California.

18. Venue properly lies in this District because, *inter alia*, Defendant Postmeds, Inc.'s principal place of business is located in this District, Defendant transacts substantial business in this District, and a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District.

# FACTUAL ALLEGATIONS

## *Overview of Postmeds*

19.    Postmeds is "a digital health startup that provides pharmacy fulfillment services for healthcare organizations."[1] Postmeds operates Truepill, a "nationwide network of [accredited] mail order and specialty pharmacies."[2] Postmeds has delivered 20 million prescriptions to three million patients.[3]

20.    In the regular course of its business, Postmeds collects and maintains the PII/PHI of the persons using its services. Postmeds obtained and maintained the PII/PHI of Plaintiff and Class members as a condition of providing pharmacy or related services.

21.    Postmeds's website states it "takes the security and confidentiality of PHI very seriously."[4] Postmeds promises that it "uses a set of policies and procedures to safeguard our physical and technical infrastructure to maintain compliance with the HIPAA Privacy Rule, Security Rule, Transactions and Code Sets Rule, and their implementing regulations."[5]

22.    Postmeds's website claims "patients' safety is always our top priority."[6]

23.    Postmeds's website contains a Notice of HIPAA Privacy Practices (the "Privacy Notice").[7] The Privacy Notice "describes how medical information about [patients] may be used and disclosed."[8]

---

[1] Carly Page, *Digital Pharmacy Startup Truepill Says Hackers Accessed Sensitive Data Of 2.3 Million Patients*, TECHCRUNCH (Nov. 15, 2023 8:00 AM), https://techcrunch.com/2023/11/15/truepill-hackers-millions-patients/?guccounter=1.

[2] *Homepage*, TRUEPILL, https://www.truepill.com/ (last accessed Nov. 21, 2023).

[3] *Id.*

[4] *API HIPAA & Security*, TRUEPILL, https://docs.truepill.com/#hipaa-amp-security (last accessed Nov. 21, 2023).

[5] *Id.*

[6] *Patient Safety API*, TRUEPILL, https://docs.truepill.com/#patient-safety-api (last accessed Nov. 21, 2023).

[7] *Notice of HIPAA Privacy Practices*, TRUEPILL, https://www.truepill.com/legal/nopp (last accessed Nov. 21, 2023).

[8] *Id.*

CLASS ACTION COMPLAINT

24.     In the Privacy Notice, Postmeds claims it will use patients' information to, *inter alia*, provide treatment, bill for its services, and run its organization.[9] It promises it "will not use or share your information other than as described [in the Privacy Notice] unless you tell us we can in writing."[10]

25.     Postmeds acknowledges that it is "required by law to maintain the privacy and security of your protected health information."[11] Postmeds promises it "will let you know promptly if a breach occurs that may have compromised the privacy or security of your information."[12]

26.     Plaintiff and Class members are current or former patients of Postmeds who entrusted Postmeds with their PII/PHI.

### The Data Breach

27.     Between approximately August 30, 2023, and September 1, 2023, a "bad actor gained access to a subset of [Postmeds's] files used for pharmacy management and fulfillment services."[13] Postmeds determined that the unauthorized third party accessed files containing "patient names, medication type . . . demographic information and/or prescribing physician name."[14]

28.     Despite learning of the Data Breach on August 31, 2023, Postmeds failed to notify patients of the Data Breach until October 30, 2023, two months later.[15] Postmeds's failure to promptly notify Plaintiff and Class members that their PII/PHI was accessed and stolen virtually ensured that the unauthorized third parties who exploited those security lapses could monetize, misuse, or disseminate that PII/PHI before Plaintiff and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Notice of a Data Security Incident*, POSTMEDS, https://assets.website-files.com/650b733c29599811871814e3/65403dd34d99148b02ca8ece_4853-3845-4924-v1.pdf (last accessed Nov. 21, 2023).

[14] *Id.*

[15] *Id.*

CLASS ACTION COMPLAINT

***Postmeds Knew that Criminals Target PII/PHI***

29.    At all relevant times, Postmeds knew or should have known that the highly sensitive PII/PHI it collected and stored was a target for malicious actors. Indeed, Postmeds promised to let patients know if their information was compromised in a data breach.[16] Despite such knowledge, Postmeds failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII/PHI from cyberattacks that Postmeds should have anticipated and guarded against.

30.    It is well known among companies that store sensitive personally identifying information that such information—such as the PII/PHI stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[17]

31.    Cyber criminals seek out PHI at a greater rate than other sources of personal information. In a 2023 report, the healthcare compliance company Protenus found that there were 956 medical data breaches in 2022 with over 59 million patient records exposed.[18] This is an increase from the 758 medical data breaches which exposed approximately 40 million records that Protenus compiled in 2020.[19]

---

[16] *Notice of HIPAA Privacy Practices*, *supra* note 7.

[17] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019, 8:05 A.M.), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[18] *See 2023 Breach Barometer*, PROTENUS, https://www.protenus.com/breach-barometer-report (last accessed Nov. 21, 2023).

[19] *See id*.

CLASS ACTION COMPLAINT

32.     PII/PHI is a valuable property right.[20] The value of PII/PHI as a commodity is measurable.[21] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[22] American companies are estimated to have spent over $19 billion on acquiring personal data of consumers in 2018.[23] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

33.     As a result of the real and significant value of these data, identity thieves and other cyber criminals have openly posted credit card numbers, Social Security numbers ("SSNs"), PII/PHI, and other sensitive information directly on various internet websites making the information publicly available. This information from various breaches, including the information exposed in the Data Breach, can be readily aggregated with other such data and become more valuable to thieves and more damaging to victims.

34.     PHI is particularly valuable and has been referred to as a "treasure trove for criminals."[24] A cybercriminal who steals a person's PHI can end up with as many as "seven to ten personal identifying characteristics of an individual."[25]

---

[20] *See* Marc van Lieshout, *The Value of Personal Data*, 457 INT'L FED'N FOR INFO. PROCESSING 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible…"), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[21] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE.COM (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[22] OECD, *Exploring the Economics of Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD iLIBRARY (April 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.

[23] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, IAB.COM (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

[24] *See* Andrew Steager, *What Happens to Stolen Healthcare Data*, HEALTHTECH MAG. (Oct. 20, 2019), https://healthtechmagazine.net/article/2019/10/what-happens-stolen-healthcare-data-perfcon (quoting Tom Kellermann, Chief Cybersecurity Officer, Carbon Black, stating "Health information is a treasure trove for criminals.").

[25] *Id.*

35.     All-inclusive health insurance dossiers containing sensitive health insurance information, names, addresses, telephone numbers, email addresses, SSNs, and bank account information, complete with account and routing numbers, can fetch up to $1,200 to $1,300 each on the black market.[26] According to a report released by the Federal Bureau of Investigation's ("FBI") Cyber Division, criminals can sell healthcare records for 50 times the price of a stolen Social Security or credit card number.[27]

36.     Criminals can use stolen PII/PHI to extort a financial payment by "leveraging details specific to a disease or terminal illness."[28] Quoting Carbon Black's Chief Cybersecurity Officer, one recent article explained: "Traditional criminals understand the power of coercion and extortion . . . By having healthcare information—specifically, regarding a sexually transmitted disease or terminal illness—that information can be used to extort or coerce someone to do what you want them to do."[29]

37.     Consumers place a high value on the privacy of their data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[30]

38.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII/PHI has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

---

[26] *See* SC Staff, *Health Insurance Credentials Fetch High Prices in the Online Black Market*, SC MAG. (July 16, 2013), https://www.scmagazine.com/news/breach/health-insurance-credentials-fetch-high-prices-in-the-online-black-market.

[27] *See* Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain* (April 8, 2014), https://www.illuminweb.com/wp-content/uploads/ill-mo-uploads/103/2418/health-systems-cyber-intrusions.pdf.

[28] Steager, *supra* note 24.

[29] *Id.*

[30] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

CLASS ACTION COMPLAINT

***Theft of PII/PHI Has Grave and Lasting Consequences for Victims***

39.     Theft of PII/PHI can have serious consequences for the victim. The FTC warns consumers that identity thieves use PII to receive medical treatment, start new utility accounts, and incur charges and credit in a person's name.[31][32]

40.     Experian, one of the largest credit reporting companies in the world, warns consumers that "[i]dentity thieves can profit off your personal information" by, among other things, selling the information, taking over accounts, using accounts without permission, applying for new accounts, obtaining medical procedures, filing a tax return, and applying for government benefits.[33]

41.     Identity theft is not an easy problem to solve. In a survey, the Identity Theft Resource Center found that almost 20% of victims of identity misuse needed more than a month to resolve issues stemming from identity theft.[34]

42.     Theft of PII is even more serious when it includes theft of PHI. Data breaches involving medical information "typically leave[] a trail of falsified information in medical records that can plague victims' medical and financial lives for years."[35] It "is also more difficult to detect, taking almost twice as long as normal identity theft."[36] In warning consumers on the dangers of medical identity theft, the

---

[31] *See* Federal Trade Commission, *What to Know About Identity Theft*, FED. TRADE COMM'N CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Nov. 21, 2023).

[32] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 12 C.F.R. § 1022.3(h). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." 12 C.F.R. § 1022.3(g).

[33] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[34] Identity Theft Resource Center, *2023 Consumer Aftermath Report*, IDENTITY THEFT RES. CTR. (2023), https://www.idtheftcenter.org/publication/2023-consumer-impact-report/ (last accessed Nov. 21, 2023).

[35] Pam Dixon & John Emerson, *The Geography of Medical Identity Theft*, FTC.GOV (Dec. 12, 2017), http://www.worldprivacyforum.org/wp-content/uploads/2017/12/WPF_Geography_of_Medical_Identity_Theft_fs.pdf.

[36] *See* Federal Bureau of Investigation, *Health Care Systems and Medical Devices at Risk . . .*, *supra* note 27.

FTC states that an identity thief may use PII/PHI "to see a doctor, get prescription drugs, buy medical devices, submit claims with your insurance provider, or get other medical care." [37] The FTC also warns, "If the thief's health information is mixed with yours it could affect the medical care you're able to get or the health insurance benefits you're able to use." [38]

43.     With access to an individual's PII/PHI, criminals can do more than just empty a victim's bank account—they can also commit all manner of fraud, including: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or, filing a fraudulent tax return using the victim's information. In addition, identity thieves may even give the victim's personal information to police during an arrest. [39]

44.     A report published by the World Privacy Forum and presented at the US FTC Workshop on Informational Injury describes what medical identity theft victims may experience:

    a.    Changes to their health care records, most often the addition of falsified information, through improper billing activity or activity by imposters. These changes can affect the healthcare a person receives if the errors are not caught and corrected.

    b.    Significant bills for medical goods and services neither sought nor received.

    c.    Issues with insurance, co-pays, and insurance caps.

    d.    Long-term credit problems based on problems with debt collectors reporting debt due to identity theft.

    e.    Serious life consequences resulting from the crime; for example, victims have been falsely accused of being drug users based on falsified entries to their medical files; victims have had their children removed from them due to medical activities of the imposter; victims have been denied jobs due to incorrect information placed in their health files due to the crime.

    f.    As a result of improper and/or fraudulent medical debt reporting, victims may not qualify for mortgage or other loans and may experience other financial impacts.

    g.    Phantom medical debt collection based on medical billing or other identity information.

---

[37] *See What to Know About Medical Identity Theft*, FED. TRADE COMM'N CONSUMER INFO., https://www.consumer.ftc.gov/articles/what-know-about-medical-identity-theft (last accessed Nov. 21, 2023).

[38] *Id.*

[39] *See* Federal Trade Commission, *Warning Signs of Identity Theft*, IDENTITYTHEFT.GOV https://www.identitytheft.gov/Warning-Signs-of-Identity-Theft (last accessed Nov. 21, 2023).

CLASS ACTION COMPLAINT

h.      Sales of medical debt arising from identity theft can perpetuate a victim's debt collection and credit problems, through no fault of their own. [40]

45.      There may also be a time lag between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. For example, on average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information. [41]

***Damages Sustained by Plaintiff and Class Members***

46.      Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft—risk which justifies or necessitates expenditures for protective and remedial services, for which they are entitled to compensation; (ii) the compromise, publication, and theft of their PII/PHI; (iii) breach of the confidentiality of their PII/PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (v) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; (vi) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (vii) the continued risk to their PII/PHI which remains in Postmeds's possession; (viii) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; (ix) overpayment for services that were received without adequate data security; and (x) increased risk of targeted harassment.

## CLASS ALLEGATIONS

47.      This action is brought and may be properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23.

48.      Plaintiff brings this action on behalf of himself and all members of the following National Class of similarly situated persons:

All United States citizens whose PII/PHI was compromised by or disclosed to unauthorized persons in the Data Breach, including all who were sent a notice of the Data Breach.

---

[40] *See* Dixon & Emerson, *supra* note 35.

[41] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

CLASS ACTION COMPLAINT

49.     Excluded from the Class are Postmeds, Inc., and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

50.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51.     The members of the Class are so numerous that joinder of each of the Class members in a single proceeding would be impracticable. Postmeds reported to the Department of Health and Human Services that approximately 2,364,359 people were included in the data breach.[42]

52.     Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

    a.  Whether Postmeds had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII/PHI from unauthorized access and disclosure;

    b.  Whether Postmeds had a duty not to disclose the PII/PHI of Plaintiff and Class members to unauthorized third parties;

    c.  Whether Postmeds failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII/PHI;

    d.  Whether an implied contract existed between Class members and Postmeds, providing that Postmeds would implement and maintain reasonable security measures to protect and secure Class members' PII/PHI from unauthorized access and disclosure;

    e.  Whether Postmeds engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII/PHI of Plaintiff and Class members; and

    f.  Whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

53.     Postmeds engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, on behalf of himself and all other Class members. Individual questions, if

---

[42] *See Cases Currently Under Investigation*, DEP'T HEALTH & HUMAN SERVS., https://ocrportal.hhs.gov/ocr/breach/breach_report.jsf (last accessed Nov. 21, 2023).

CLASS ACTION COMPLAINT

any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

54.     Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed members of the Class, had his PII/PHI compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Postmeds, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

55.     Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that he has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

56.     A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Postmeds, so it would be impracticable for Class members to individually seek redress from Postmeds's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE

57.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

58.     Postmeds owed a duty to Plaintiff and Class members to exercise reasonable care in safeguarding and protecting the PII/PHI in Postmeds's possession, custody, or control.

CLASS ACTION COMPLAINT

59.     Postmeds knew or should have known the risks of collecting and storing Plaintiff's and Class members' PII/PHI and the importance of maintaining secure systems. Postmeds knew or should have known that it faced an increased threat of customer data theft, as judged by the many data breaches that targeted companies that stored PII/PHI in recent years.

60.     Given the nature of Postmeds's business, the sensitivity and value of the PII/PHI it maintains, and the resources at its disposal, Postmeds should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

61.     Postmeds breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII/PHI entrusted to it—including Plaintiff's and Class members' PII/PHI.

62.     It was or should have been reasonably foreseeable to Postmeds that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII/PHI to unauthorized individuals.

63.     But for Postmeds's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII/PHI would not have been compromised.

64.     As a result of Postmeds's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and Class members have suffered, and will continue to suffer, economic damages and other injury and actual harm in the form of, *inter alia*: (i) a substantially increased and imminent risk of identity theft—risk justifying or necessitating expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII/PHI; (iii) breach of the confidentiality of their PII/PHI; (iv) deprivation of the value of their PII/PHI, for which there is a well-established national and international market; (v) lost time and money incurred to mitigate and remediate the effects of the Data

- 14 -

Breach, including the increased risk of identity theft they face and will continue to face; and (vi) overpayment for the services that were received without adequate data security.

**COUNT II**
**NEGLIGENCE PER SE**

65.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

66.     Postmeds's duties arise from, *inter alia*, the HIPAA Privacy Rule ("Standards for Privacy of Individually Identifiable Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and E, and the HIPAA Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C (collectively, "HIPAA Privacy and Security Rules").

67.     Postmeds's duties also arise from Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as Postmeds, of failing to employ reasonable measures to protect and secure PII/PHI.

68.     Postmeds's duties also arise from the Illinois Personal Information Protection Act ("IPIPA"), 815 ILCS 530/45(a) which requires:

> A data collector that owns or licenses, or maintains or stores but does not own or license, records that contain personal information concerning an Illinois resident shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure.

815 ILCS. 530/45.

69.     Additionally, under 815 ILCS 530/10, Postmeds had a duty to "notify the resident at no charge that there has been a breach of the security of the system data following discovery or notification of the breach […] in the most expedient time possible and without unreasonable delay." 815 ILCS 530/10,

70.     Postmeds violated HIPAA Privacy and Security Rules, Section 5 of the FTCA, and IPIPA by failing to use reasonable measures to protect Plaintiff's and other Class members' PII/PHI, by failing to provide timely notice, and by not complying with applicable industry standards. Postmeds's conduct was particularly unreasonable given the nature and amount of

- 15 -

PII/PHI it obtains and stores, and the foreseeable consequences of a data breach involving PII/PHI including, specifically, the substantial damages that would result to Plaintiff and the other Class members.

71.     Postmeds's violation of IPIPA, HIPAA Privacy and Security Rules, and Section 5 of the FTCA constitutes negligence per se.

72.     Plaintiff and Class members are within the class of persons that IPIPA, HIPAA Privacy and Security Rules, and Section 5 of the FTCA were intended to protect.

73.     The harm occurring as a result of the Data Breach is the type of harm that IPIPA, HIPAA Privacy and Security Rules, and Section 5 of the FTCA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and Class members as a result of the Data Brach.

74.     It was reasonably foreseeable to Postmeds that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII/PHI by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems, would result in the release, disclosure, and dissemination of Plaintiff's and Class members' PII/PHI to unauthorized individuals.

75.     The injury and harm that Plaintiff and the other Class members suffered was the direct and proximate result of Postmeds's violations of harm IPIPA, HIPAA Privacy and Security Rules, and Section 5 of the FTCA. Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in Postmeds's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI

compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## COUNT III
## BREACH OF FIDUCIARY DUTY

76.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

77.     Plaintiff and Class members gave Postmeds their PII/PHI in confidence, believing that Postmeds would protect that information. Plaintiff and Class members would not have provided Postmeds with this information had they known it would not be adequately protected. Postmeds's acceptance and storage of Plaintiff's and Class members' PII/PHI created a fiduciary relationship between Postmeds and Plaintiff and Class members. In light of this relationship, Postmeds must act primarily for the benefit of its patients, which includes safeguarding and protecting Plaintiff's and Class members' PII/PHI.

78.     Due to the nature of the relationship between Postmeds and Plaintiff and Class members, Plaintiff and Class members were entirely reliant upon Postmeds to ensure that their PII/PHI was adequately protected. Plaintiff and Class members had no way of verifying or influencing the nature and extent of Postmeds's data security policies and practices, and Postmeds was in an exclusive position to guard against the Data Breach.

79.     Postmeds has a fiduciary duty to act for the benefit of Plaintiff and Class members upon matters within the scope of their relationship. It breached that duty by failing to properly protect the integrity of the system containing Plaintiff's and Class members' PII/PHI, failing to comply with the data security guidelines set forth by HIPAA, and otherwise failing to safeguard Plaintiff's and Class members' PII/PHI that it collected.

80.     As a direct and proximate result of Postmeds's breaches of its fiduciary duties, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate

the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in Postmeds's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**

81.     Plaintiff re-alleges and incorporate by reference all preceding paragraphs as if fully set forth herein.

82.     In connection with the dealings Plaintiff and Class members had with Postmeds, Plaintiff and Class members entered into implied contracts with Postmeds.

83.     Pursuant to these implied contracts, Plaintiff and Class members provided Postmeds with their PII/PHI, directly or indirectly, in order for Postmeds to provide services or products. In exchange, Postmeds agreed to, among other things, and Plaintiff and Class members understood that Postmeds would: (1) provide services or products to Plaintiff and Class members; (2) take reasonable measures to protect the security and confidentiality of Plaintiff's and Class members' PII/PHI; and (3) protect Plaintiff's and Class members' PII/PHI in compliance with federal and state laws, regulations, and industry standards.

84.     The protection of PII/PHI was a material term of the implied contracts between Plaintiff and Class members, on the one hand, and Postmeds, on the other hand. Indeed, Postmeds was clear in its representations in its privacy policy, and on that basis of those representations Plaintiff understood that, Postmeds respects and is committed to protecting customer privacy.

85.     Had Plaintiff and Class members known that Postmeds would not adequately protect its customers' and former customers' PII/PHI, they would not have entrusted Postmeds with their PII/PHI.

86.     Plaintiff and Class members performed their obligations under the implied contracts when they provided Postmeds with their PII/PHI, either directly or indirectly.

87.     Postmeds breached its obligations under its implied contracts with Plaintiff and Class members in failing to implement and maintain reasonable security measures to protect and secure their PII/PHI and in failing to implement and maintain security protocols and procedures to protect Plaintiff's

and Class members' PII/PHI in a manner that complies with applicable laws, regulations, and industry standards.

88.     Postmeds's breach of its obligations of the implied contracts with Plaintiff and Class members directly resulted in the Data Breach and the injuries that Plaintiff and all other Class members have suffered from the Data Breach.

89.     Plaintiff and all other Class members were damaged by Postmeds's breach of implied contracts because: (i) they paid—directly or indirectly—for data security protection they did not receive; (ii) they face a substantially increased and imminent risk of identity theft—a risk justifying or necessitating expenditures for protective and remedial services for which they are entitled to compensation; (iii) their PII/PHI was improperly disclosed to unauthorized individuals; (iv) the confidentiality of their PII/PHI has been breached; (v) they were deprived of the value of their PII/PHI, for which there is a well-established national and international market; and (vi) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risk of identity theft they face and will continue to face.

**COUNT V**
**UNJUST ENRICHMENT**

90.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

91.     This claim is pleaded in the alternative to the breach of implied contract claim.

92.     Plaintiff and Class members conferred a monetary benefit, directly or through their insurance, upon Postmeds in the form of monies paid for services or products to Postmeds.

93.     Postmeds accepted or had knowledge of the benefits conferred upon it by Plaintiff and Class members. Postmeds also benefitted from the receipt of Plaintiff's and Class members' PII/PHI, as this was used in providing products and services and to facilitate Postmeds's business and billing.

94.     As a result of Postmeds's conduct, Plaintiff and Class members suffered actual damages in an amount equal to the difference in value between their payments made with reasonable data privacy and security practices and procedures that Plaintiff and Class members paid for, and those payments without reasonable data privacy and security practices and procedures that they received.

95.     Postmeds should not be permitted to retain the money belonging to Plaintiff and Class members because Postmeds failed to adequately implement the data privacy and security procedures that Plaintiff and Class members paid for and that were otherwise mandated by federal, state, and local laws and industry standards.

96.     Postmeds should be compelled to provide for the benefit of Plaintiff and Class members all unlawful proceeds received by it as a result of the conduct and Data Breach alleged herein.

**COUNT VI**
**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/2, *et seq*. ("ICFA")**

97.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

98.     Postmeds offered and continues to offer pharmacy and other services in the State of Illinois.

99.     Plaintiff and Class members purchased and received pharmacy or other services or products from Postmeds for personal, family, or household purposes.

100.    Postmeds engaged in unlawful and unfair practices in violation of the ICFA by failing to implement and maintain reasonable security measures to protect and secure its clients' PII/PHI in a manner that complied with applicable laws, regulations, and industry standards.

101.    Postmeds makes explicit statements to its patients that their PII/PHI will remain private.

102.    Postmeds's duties also arise from the Illinois Personal Information Protection Act, 815 ILCS 530/45(a) which requires:

> A data collector that owns or licenses, or maintains or stores but does not own or license, records that contain personal information concerning an Illinois resident shall implement and maintain reasonable security measures to protect those records from unauthorized access, acquisition, destruction, use, modification, or disclosure.

815 ILCS 530/45. Postmeds violated this duty by failing to implement reasonably secure data security policies.

103.    Postmeds further violated the ICFA by failing to notify its current and former patients of the data breach in a timely manner. The Illinois Personal Information Protection Act requires entities that experience a data breach to notify Illinois residents "in the most expedient time possible and without

- 20 -

unreasonable delay." 815 ILCS 530/10. Violation of the Illinois Personal Information Protection Act constitutes an unlawful practice under the ICFA. 815 ILCS 530/20.

104.    Due to the Data Breach, Plaintiff and Class members have lost property in the form of their PII/PHI. Further, Postmeds's failure to adopt reasonable practices in protecting and safeguarding its clients' PII/PHI will force Plaintiff and Class members to spend time or money to protect against identity theft. Plaintiff and Class members are now at a higher risk of medical identity theft and other crimes. This harm sufficiently outweighs any justifications or motives for Postmeds's practice of collecting and storing PII/PHI without appropriate and reasonable safeguards to protect such information.

105.    As a result of Postmeds's violations of the ICFA, Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantial increase in the likelihood of identity theft; (ii) the compromise, publication, and theft of their PII/PHI; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII/PHI; (iv) lost opportunity costs associated with effort attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII/PHI which remains in Postmeds's possession; (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII/PHI compromised as a result of the Data Breach; and (vii) overpayment for the services that were received without adequate data security.

## PRAYER FOR RELIEF

Plaintiff, individually, and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Postmeds as follows:

A.    certifying the Class and Subclass as requested herein, designating Plaintiff as Class Representative, and appointing Plaintiff's counsel as Class Counsel;

B.    awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.    awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of himself and the Class, seeks appropriate injunctive relief designed to prevent Postmeds from experiencing another data breach by adopting and

implementing best data security practices to safeguard PII/PHI and to provide or extend credit monitoring services and similar services to protect against all types of identity theft;

      D.     awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

      E.     awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

      F.     awarding Plaintiff and the Class such other favorable relief as allowable under law.

## <u>JURY TRIAL DEMANDED</u>

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.

Respectfully submitted,

DATED: November 28, 2023

By: /s/ *John J. Nelson*
John J. Nelson (SBN 317598)
MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, LLC
402 W. Broadway, Suite 1760
San Diego, CA 92101
Telephone: (858) 209-6941
Email: jnelson@milberg.com

Ben Barnow*
Anthony L. Parkhill*
BARNOW AND ASSOCIATES, P.C.
205 West Randolph Street, Suite 1630
Chicago, IL 60606
Tel: 312-621-2000
Fax: 312-641-5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

**pro hac vice* forthcoming

*Attorneys for Plaintiff and the Proposed Class*

- 22 -

CLASS ACTION COMPLAINT